Terrence J. Connolly
Christopher R. Harris
Adam J. Goldberg
John Molluzzo
**LATHAM & WATKINS LLP**
885 Third Avenue, Suite 1000
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Christopher.Harris@lw.com
Adam.Goldberg@lw.com
John.Molluzzo@lw.com

**10 CV 8488**



RECEIVED NOV 10 2010 U.S.D.C. S.D. N.Y. COMPLETED

*Attorneys for Defendant CRES Investment No. II, LP*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INNKEEPERS USA TRUST, *et al.*,<br><br>Debtors. | Chapter 11 Case<br><br>Case No.: 10-13800 (SCC)<br><br>(Jointly Administered) |
| LNR PARTNERS, LLC and LNR SECURITIES HOLDINGS, LLC,<br><br>                         Plaintiffs,<br><br>v.<br><br>CRES INVESTMENT NO. II, LP,<br><br>                         Defendant. | 10 Civ.          (   )<br><br>Adv. Pro. No. 10-_____<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

Defendant CRES Investment No. II, LP ("CRES" or the "Removing Defendant") hereby gives notice of the removal (the "Notice of Removal") to this Court, pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027, of the action captioned *LNR Partners*

*LLC and LNR Securities Holdings, LLC v. CRES Investment No. II, LP*, in the New York Supreme Court, Index No. 651850/10 (the "State Court Action").

## BACKGROUND

1.  In June 2007, Grand Prix Holdings LLC and its direct and indirect subsidiaries, including Innkeepers USA Trust ("Innkeepers"), were acquired by Apollo Investment Corp. and certain of its subsidiaries. The acquisition was financed through equity invested by Apollo Investment Corp. and its subsidiaries, assumption of certain debt and incurrence of new debt. In connection with the acquisition, forty-five subsidiaries of Innkeepers (the "Borrowers") entered into that certain Loan Agreement (as amended, the "Fixed Rate Mortgage Loan Agreement), dated as of June 29, 2007, pursuant to which the Borrowers incurred mortgage loans in the original aggregate principal amount of approximately $825 million (the "Fixed Rate Mortgage Obligations").

2.  In or about November 2007, the lenders under the Fixed Rate Mortgage Loan Agreement transferred the Fixed Rate Mortgage Obligations in equal parts to two trusts, known as the LB-UBS Commercial Mortgage Trust 2007-C6 (the "C6 Trust") and the LB-UBS Commercial Mortgage Trust 2007-C7 (the "C7 Trust" and together with the C6 Trust, the "Trusts") in exchange for certificates representing their interests in the Trusts. Certain investors later purchased those interests and became certificate holders of the beneficial interests in the Trusts.

3.  It is alleged in the State Court Action, among other things, that (a) the Fixed Rate Mortgage Loan Agreement is governed by a Co-Lender Agreement dated as of August 13, 2007 (the "Co-Lender Agreement"), (b) the C6 Trust is governed by that certain Pooling and Servicing Agreement dated as of August 13, 2007 (the "C6 PSA"), (c) the C7 Trust is governed by that

2

certain Pooling and Servicing Agreement dated as of November 12, 2007 (the "C7 PSA"), (d) Midland Loan Services, Inc. ("Midland") is the special servicer of C6 Trust (in such capacity, the "Special Servicer"), (e) Plaintiff LNR Securities Holdings, LLC ("LNRSH") and Defendant CRES each hold beneficial interests in the C7 Trust, and (f) pursuant to the Co-Lender Agreement, the C6 PSA and the C7 PSA, CRES has the right to remove and replace the Special Servicer.

4. On July 19, 2010, Innkeepers and certain of its subsidiaries, including the Borrowers (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' chapter 11 cases are currently pending under the title *In re Innkeepers USA Trust, et al.*, Case No. 10-13800 (SCC) (the "Chapter 11 Cases"), before the Honorable Judge Shelley C. Chapman.

5. On July 19, 2010 (the first day of the Chapter 11 Cases), the Debtors filed a motion to assume a plan support agreement (the "Plan Support Agreement") among the Debtors and Lehman ALI Inc., a creditor of the Debtors. The Debtors had negotiated and signed the Plan Support Agreement, regarding the terms of a chapter 11 plan of reorganization to be proposed by the Debtors, prior to initiating the Chapter 11 Cases. On September 2, 2010, the Bankruptcy Court denied the Debtors' motion to assume the Plan Support Agreement.

6. On August 30, 2010, Midland, as the Special Servicer, filed a motion to terminate the Debtors' exclusive periods in which to propose and solicit acceptances for a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code (the "Midland Motion to Terminate Exclusivity"). In the Midland Motion to Terminate Exclusivity, Midland seeks authority to propose and solicit acceptances for a chapter 11 plan of reorganization. The Midland Motion to

3

Terminate Exclusivity includes a commitment letter from Five Mile Capital II Pooling REIT LLC (together with Five Mile Capital Partners LLC, "Five Mile") to Midland as Special Servicer regarding a $236 million new money investment that would form the basis of a chapter 11 plan to be proposed by Midland as Special Servicer. Various other parties have joined in the Midland Motion to Terminate Exclusivity. A copy of the Midland Motion to Terminate Exclusivity filed on August 30, 2010 is attached hereto as Exhibit A.

7. On October 27, 2010, the Debtors filed a motion to extend their exclusive periods in which to propose and solicit acceptances for a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code (the "Debtors' Exclusivity Motion"). In the Debtors' Exclusivity Motion, the Debtors submit that they are engaging in ongoing discussions and negotiations concerning the terms of a chapter 11 plan with their creditors and potential sponsors, including Five Mile.

8. On October 27, 2010, Plaintiffs filed a summons and complaint (the "Complaint") commencing the State Court Action against CRES. A copy of the summons and complaint filed on October 27, 2010 are attached hereto as Exhibit B.

9. In the Complaint, the Plaintiffs allege that Plaintiff LNRSH is party to a servicer designation agreement (the "Servicer Designation Agreement") with CRES pursuant to which LNRSH is entitled to require CRES to remove and replace the Special Servicer with a party of the LNRSH's choosing. In the Complaint, Plaintiffs seek, among other things, specific performance of the Servicer Designation Agreement and injunctive and declaratory relief requiring CRES to appoint Plaintiff LNR Partners, LLC ("LNR") as Special Servicer.

10. On October 27, 2010, Plaintiffs applied for temporary and preliminary injunctive relief to require CRES to appoint Plaintiff LNR as Special Servicer and filed a memorandum of law in support of their application (the "Plaintiffs' Memo"). Plaintiffs allege in the Plaintiffs'

Memo that they face a risk of irreparable injury because "Midland, as Special Servicer, is currently making important decisions and judgment calls in the Innkeepers bankruptcy that will impact the ultimate value of the Innkeepers loan." Plaintiffs argue that this alleged risk of irreparable injury is immediate because "key hearings" on the Debtors' Exclusivity Motion and the Midland Motion to Terminate Exclusivity are scheduled before the Bankruptcy Court on November 10, 2010, and because they need to replace Midland in participating in plan negotiations. A copy of the Plaintiffs' Memo and other documents filed on October 27, 2010 in connection with Plaintiffs' application for a temporary restraining order and preliminary injunction is attached hereto as Exhibit C.[1]

11. On October 29, 2010, the New York Supreme Court denied Plaintiffs' application for a temporary restraining order requiring CRES to appoint LNR as Special Servicer.

12. The Defendant in the State Court Action has yet to file a responsive pleading.

## BASIS FOR REMOVAL

13. The State Court Action is a civil proceeding that both arises in and is related to the Chapter 11 Cases. The relief requested in the State Court Action puts at issue the actions Midland has taken in the Bankruptcy Court, including the Midland Motion to Terminate Exclusivity, and future actions regarding Midland's participating in plan negotiations. Further, the issues in the State Court Action are inextricably linked to and arise in the Chapter 11 Cases for the following reasons, among others: (a) Plaintiffs' alleged injury arises out of the actions

---

[1] Exhibit C includes (1) Plaintiffs' Memorandum of Law in Support of Application for Temporary and Preliminary Injunctive Relief, as amended on October 28, 2010, (2) Plaintiffs' Proposed Order to Show Cause, (3) Plaintiffs' Request for Judicial Intervention, (4) Plaintiffs' Statement in Support of Request for Assignment to the Commercial Division, (5) Plaintiffs' Affirmation of Emergent Circumstances, (6) Plaintiffs' Affidavit of Lawrence P. Gottesman and (7) Plaintiffs' Affidavit of Kevin Wodicka.

taken and to be taken by Midland in the Chapter 11 Cases, including the Midland Motion to Terminate Exclusivity and participating in future plan negotiations, and therefore could not arise outside of the Chapter 11 Cases; (b) Plaintiffs' requests for preliminary and permanent injunctions, if granted, would directly affect (i) the Debtors' ability to negotiate a chapter 11 plan of reorganization with the Special Servicer—the holder of the largest single claim in the Chapter 11 Cases—which could impede the Debtors' reorganization, (ii) the effectiveness of Five Mile's commitment letter extended to Midland as Special Servicer and (iii) development of a potential chapter 11 plan of reorganization to be proposed by Midland as Special Servicer and sponsored by Five Mile; (c) the claims in the State Court Action arise from agreements involving other parties that are not parties to the State Court Action and that have rights in connection with the Chapter 11 Cases under those agreements, among others, which would likely be adversely affected by any ruling in the State Court Action and which should be construed by the Bankruptcy Court; (d) the State Court Action invades upon the Bankruptcy Court's ability to administer the Chapter 11 Cases, including, without limitation, ruling on the Midland Motion to Terminate Exclusivity currently pending before the Bankruptcy Court, and supervising plan development and negotiations; and (e) permitting the continuance of the State Court Action could lead to inconsistent ruling on similar issues of law.

14.     This Court has jurisdiction of the State Court Action pursuant to 28 U.S.C. § 1334, and the action may therefore be removed to this Court pursuant to 28 U.S.C. § 1452. Further, removal of each claim of the State Court Action to Bankruptcy Court is authorized by 28 U.S.C. §§ 1452, 1334 and 157(a), in accordance with 28 U.S.C. § 1446(a) and/or Federal Rule of Bankruptcy Procedure 9027. Furthermore, because resolution of the claims asserted in the State Court Action arise in the Chapter 11 Cases, will significantly affect the administration

of the Debtors' bankruptcy estates, and would affect the adjustment of the debtor-creditor or equity security holder relationship, this action is a "core" proceeding under 28 U.S.C. § 157(b)(1) and 157(b)(2)(A) and (O). In the event that these claims are determined to be non-core, the Removing Defendant consents to the entry of final orders or judgments by the Bankruptcy Court.

15. This Notice of Removal has been filed within the thirty (30) days after service of the initial pleadings in the State Court Action in accordance with 28 U.S.C. § 1446(b) and/or Federal Rule of Bankruptcy Procedure 9027(a)(3).

16. No previous notice of removal for the relief sought herein has been made to this or any other court.

17. The Notice of Removal is accompanied by a copy of all process and pleadings filed in the State Court Action, with the exception of any discovery material, in accordance with 28 U.S.C. § 1446(d) and/or Federal Rule of Bankruptcy Procedure 9027(b) and (c). Copies of the above-mentioned process and pleadings in the State Court Action are to be filed contemporaneously with the filing of this Notice of Removal in accordance with 28 U.S.C. § 1446(a) and/or Federal Rule of Bankruptcy Procedure 9027(a)(1).

18. A copy of the Notice of Removal will be filed with the Supreme Court of the State of New York, County of New York, and will be served on Plaintiffs' counsel.

WHEREFORE, CRES hereby removes the entire State Court Action from the New York State Supreme Court, to the United States District Court for the Southern District of New York, pursuant to Bankruptcy Rule 9027 and respectfully requests that the matter be referred to the United States Bankruptcy Court for the Southern District of New York.

Dated: New York, New York
November 10, 2010

LATHAM & WATKINS LLP

By: _____
Terrence J. Connolly
Christopher R. Harris
Adam J. Goldberg
John Molluzzo

885 Third Avenue, Suite 1000
New York, New York 10022-4834
(212) 906-1200

*Attorneys for Defendant*
*CRES Investment No. II, LP*